# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TYEESHA MAHAN,<br>**Plaintiff,**<br><br>v.<br><br>CITY OF PHILADELPHIA,<br>**Defendant.** | :<br>:<br>:<br>:  **CIVIL ACTION NO. 16-6377**<br>:<br>:<br>: |

## MEMORANDUM OPINION

Rufe, J.                                                                                                                                                                                                                                   November 8, 2017

Plaintiff Tyeesha Mahan, a corrections officer working for the City of Philadelphia, filed suit against the City alleging claims of disparate treatment gender discrimination, retaliation, and hostile work environment pursuant to Title VII of the Civil Rights Act of 1964[1] and the Pennsylvania Human Relations Act ("PHRA").[2] The City has moved to dismiss, arguing that Plaintiff failed to exhaust administrative remedies and failed to state a claim upon which relief can be granted. For reasons that follow, the Motion will be granted in part and denied in part.

## I. BACKGROUND

The Amended Complaint alleges the following facts, which are assumed to be true for purposes of the Motion to Dismiss. Plaintiff Tyeesha Mahan is an African American woman who has worked for the City of Philadelphia in the Philadelphia Prison System ("PPS") for the past fourteen years.[3] Since she began working for the City in May of 2003, she has worked as a corrections officer at Riverside Correctional Facility ("RCF"), which houses female inmates.[4]

In 2015, Plaintiff was assigned to the housing unit within RCF.[5] Plaintiff alleges that her

---

[1] 42 U.S.C. § 2000e, *et seq.*

[2] 43 Pa. Stat. § 951, *et seq.*

[3] Am. Compl. at ¶¶ 6-7, 10-11.

[4] *Id.* at ¶ 12.

[5] *Id.* at ¶ 14.

supervisor made the assignment because female corrections officers are preferred to work in female housing units.[6] Plaintiff alleges that assignment in the housing unit prevents her from earning overtime pay.[7] She believes that her seniority should help her obtain more favorable transfers within RCF that would afford her the opportunity to earn overtime pay.[8] To date, however, Plaintiff has not been able to obtain such a transfer.

For example, on November 10, 2015, Plaintiff was interviewed for an opening as a dog handler with RCF's K-9 Unit, but ultimately did not receive the position.[9] Plaintiff alleges the position involved working a Monday through Friday shift, which is coveted among RCF employees.[10] She submits that her qualifications and seniority at RCF should have made her an ideal candidate.[11] Although five or six women interviewed for the position with the K-9 Unit, all were rejected in favor of men.[12] Plaintiff alleges "one of the males chosen for the position of K-9 handler, C.O. Trapp was quickly dismissed from the appointment and another candidate was selected without new postings or interviews."[13] Plaintiff believes that, during this time, no women worked in the K-9 Unit.[14]

Thereafter, Plaintiff applied for several other positions outside the housing unit, but her applications were repeatedly denied.[15] For example, she applied for openings as a grievance

---

[6] *Id.* at ¶¶ 15-16.
[7] *Id.* at ¶ 14.
[8] *Id.* at ¶¶ 14, 17-18.
[9] *Id.* at ¶ 37.
[10] *Id.* at ¶¶ 37-38.
[11] *Id.* at ¶ 37.
[12] *Id.* at ¶ 41.
[13] *Id.* at ¶ 42.
[14] *Id.* at ¶ 39.
[15] *Id.* ¶¶ 33-36.

2

officer and visiting transportation officer, but these applications were rejected.[16] She also applied for transfers to RCF's Contracts Unit, Inmate Escorting Office, Unit Control Department, and its Dry Cleaners Shop, to no avail.[17]

On December 5, 2015, after receiving at least three transfer rejections, Plaintiff sent a formal grievance to the Warden of RCF concerning the lack of overtime opportunities offered to her and other women.[18] Although Plaintiff continued to apply for other positions at RCF, she was ultimately unsuccessful in obtaining a transfer that would allow her the opportunity to earn overtime pay. On June 3, 2016, therefore, "Plaintiff restated her objection to gender based discrimination in overtime assignments via another official Grievance Form."[19]

Plaintiff asserts that she was retaliated against after submitting this official grievance form.[20] In particular, she alleges "her supervisor, [Sergeant] Hardy, . . . requested that the plaintiff receive counseling (via an Official Counseling Form) because the plaintiff made logbook entries regarding, *inter alia*, lack of hand soap, flying bugs and poor ventilation in the Unit she was cleaning."[21] Plaintiff submits that she did not violate any PPS policies warranting referral to counseling, and that her supervisor's request was "submitted only as retaliation" for plaintiff's grievances alleging gender discrimination.[22]

On August 29, 2016, Plaintiff dual-filed a charge with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC"), and

---

[16] *Id.* at ¶¶ 28-36.

[17] *Id.* at ¶¶ 19-20, 28-36.

[18] *Id.* at ¶¶ 23-24.

[19] *Id.* at ¶ 25.

[20] *Id.* at ¶ 43.

[21] *Id.*

[22] *Id.* at ¶ 44.

3

shortly thereafter received a right-to-sue letter from the EEOC.[23]

## II. LEGAL STANDARD

Dismissal for failure to state a claim is appropriate if the complaint fails to allege facts sufficient to establish a plausible entitlement to relief.[24] In evaluating a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court "take[s] as true all the factual allegations of the [complaint] and the reasonable inferences that can be drawn from them," but "disregard[s] legal conclusions and recitals of the elements of a cause of action, supported by mere conclusory statements."[25] Instead, to prevent dismissal, a complaint must "set out sufficient factual matter to show that the claim is facially plausible."[26] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[27]

## III. ANALYSIS

Plaintiff raises claims of disparate treatment gender discrimination, retaliation, and hostile work environment pursuant to the PHRA and Title VII. Defendant moves to dismiss for failure to exhaust administrative remedies and failure to state a claim.

### A. Timeliness and Exhaustion

#### 1. Timeliness

Defendant argues that Plaintiff failed to file her claims under the PHRA and Title VII within the statute of limitations.

---

[23] Resp. in Opp. to Second Mot. to Dismiss at 5; Am. Compl. at ¶ 47.

[24] *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

[25] *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

[26] *Fowler*, 578 F.3d at 210 (citation and internal quotation marks omitted).

[27] *Santiago*, 629 F.3d at 128 (citations and internal quotation marks omitted).

4

"A plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief."[28] This includes timely filing a charge of discrimination with the PHRC and the EEOC within the statute of limitations before bringing suit.[29] To proceed under the PHRA, a plaintiff must file an administrative complaint with the PHRC within 180 days of the alleged acts of discrimination.[30] To proceed under Title VII, a plaintiff must "file an administrative charge with the EEOC within 300 days of the alleged unlawful employment practice."[31] The EEOC will then investigate the charge, and, if warranted, will issue a right-to-sue letter allowing the plaintiff to initiate a private action.

Plaintiff dual-filed a charge with the PHRC and the EEOC on August 29, 2016.[32] Because Plaintiff admits that she filed her PHRC charge more than 180 days after the complained of conduct, the PHRA claims will be dismissed.[33] However, Plaintiff's claims under Title VII were timely filed within the applicable 300-day statute of limitations period. The Amended Complaint alleges that, beginning on November 10, 2015, Plaintiff was interviewed for a position with RCF's K-9 Unit, but was later denied this transfer.[34] Thereafter, through the Spring of 2016, Plaintiff applied for several other transfers, but was denied these opportunities.[35] On June 3, 2016, Plaintiff filed an official grievance about being rejected from these openings

---

[28] *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163-64 (3d Cir. 2013) (internal quotation marks and citation omitted).

[29] *Id.*

[30] *Id.* at 164.

[31] *Ellingsworth v. Hartford Fire Ins. Co.*, 247 F. Supp. 3d 546, 558 (E.D. Pa. 2017) (citation omitted). *See also* 42 U.S.C. § 2000e-5(e)(1).

[32] Resp. in Opp. to Second Mot. to Dismiss at 5.

[33] *Id.* at 7.

[34] Am. Compl. at ¶¶ 37-38.

[35] *Id.* at ¶¶ 19-20, 28-36.

5

and stated that she believed RCF was discriminating against her on the basis of her gender.[36] Plaintiff then asserts that she was retaliated against for submitting this official grievance.[37] All of the conduct alleged in the Amended Complaint occurred within 300 days of filing the EEOC charge. Thus, Plaintiff's claims under Title VII will not be dismissed.

## 2. Exhaustion

Defendant contends that Plaintiff's disparate treatment and retaliation claims were not sufficiently within the scope of the EEOC charge and therefore must be dismissed for failure to exhaust administrative remedies.[38]

Once a plaintiff files a charge, the EEOC will investigate, and, if it does not take further action, will issue a right-to-sue letter allowing the plaintiff to initiate a private action. "The ensuing suit is limited to claims that are within the scope of the initial administrative charge."[39] The Court, therefore, must look to "whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC [charge], or the investigation arising therefrom."[40] Courts generally give the EEOC charge a "fairly liberal construction"[41] and focus on the facts asserted in the charge to make this determination.[42]

Here, Plaintiff filed an EEOC charge, checking the boxes that indicated she sought to file

---

[36] *Id.* at ¶ 25.

[37] *Id.* at ¶¶ 43-44.

[38] Second Mot. to Dismiss at 2, 5, 10-11.

[39] *Barzanty v. Verizon Pa., Inc.*, 361 F. App'x 411, 413-14 (3d Cir. 2010) (citing *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996)).

[40] *Antol*, 82 F.3d at 1295.

[41] *Lowenstein v. Catholic Health East*, 820 F. Supp. 2d 639, 644 (E.D. Pa. 2011) (internal quotation marks and citation omitted).

[42] *Collins v. Kimberly-Clark Pennsylvania, LLC*, 247 F. Supp. 3d 571, 587 (E.D. Pa. 2017).

6

suit for discrimination based on sex, retaliation, and disability.[43] Plaintiff wrote that she "was denied overtime and mandated to work only specified housing areas," that she was "denied an assignment on the K-9 team, despite being the most senior and qualified applicant," and that she was "constantly harassed . . . retaliated against," and subject to unfair discipline.[44]

Contrary to Defendant's assertions, Plaintiff was not required to list every position for which she unsuccessfully applied or allege the specific incidents of retaliation.[45] As noted, the EEOC charge apprises a defendant of the allegations against it, and serves as the basis for the ensuing investigation that "can reasonably be expected to grow out of the charge."[46] Plaintiff's charge was sufficient to provide a basis for investigation and put Defendant on notice that, if allowed, she would file suit based on gender discrimination and retaliation.

## B. Failure to State a Claim

Plaintiff raises claims of disparate treatment gender discrimination, retaliation, and hostile work environment pursuant to Title VII.[47] Defendant argues Plaintiff has failed to state a claim.

### 1. Disparate Treatment Gender Discrimination

To establish a prima facie case of disparate treatment gender discrimination, a plaintiff must demonstrate that: (1) she belongs to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action despite being qualified; and (4) the adverse employment action occurred under circumstances that could give rise to an inference of

---

[43] *See* Second Mot. to Dismiss, Ex. A. Although disability was mentioned in the EEOC charge, it was not asserted in the Amended Complaint and will not be considered here.

[44] *Id.*

[45] Second Mot. to Dismiss at 5, 10-11.

[46] *Barzanty*, 361 F. App'x at 414 (internal quotation marks and citations omitted).

[47] Am. Compl. at ¶¶ 48-76. Since Plaintiff's PHRA claims are time-barred, they will not be considered here.

7

discrimination.⁴⁸ "As an alternative to the fourth prong, a plaintiff may attempt to show that similarly situated individuals who are not members of the plaintiff's protected class were treated more favorably than the plaintiff."⁴⁹

Defendant contends Plaintiff fails to allege direct evidence of discrimination, or that similarly situated individuals who are not members of the protected class were treated more favorably than she was.⁵⁰ Defendant's contentions are without merit.

"In Title VII cases, a plaintiff may establish disparate treatment discrimination either by using direct evidence of intent to discriminate or using indirect evidence from which a court could infer intent to discriminate."⁵¹ A plaintiff may also show that similarly situated individuals who are not members of the plaintiff's protected class were treated more favorably than her.

Here, Plaintiff plausibly alleged facts from which a court could infer the intent to discriminate. She has also shown that similarly situated individuals who are not members of the plaintiff's protected class were treated more favorably than her. Particularly, Plaintiff alleges that although five or six women applied for openings in RCF's K-9 Unit, none of the women were chosen for the position.⁵² Instead, men were hired to fill the openings in the K-9 Unit, and at least one of the men hired had to be removed for his inadequate performance.⁵³ Additionally, Plaintiff states that the series of positions at RCF that she did not get "were given to less

---

⁴⁸ *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)).

⁴⁹ *Larochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 677 (E.D. Pa. 2016) (citing *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 273-74 (3d Cir. 2010); *McNeil v. Greyhound Lines, Inc.*, 69 F. Supp. 3d 513, 522 (E.D. Pa. 2014)).

⁵⁰ Second Mot. to Dismiss at 9-10.

⁵¹ *Selvato v. SEPTA*, 143 F. Supp. 3d 257, 267 (E.D. Pa. 2015), *aff'd*, 658 F. App'x 52 (3d Cir. 2016) (internal quotation marks, brackets, and citation omitted).

⁵² *Id.* at ¶ 41.

⁵³ *Id.* at ¶¶ 41-42.

8

qualified male coworkers with less seniority."[54] At this stage, these facts are sufficient to plausibly state the fourth element of a disparate treatment gender discrimination claim.

## 2. Retaliation

To establish a prima facie case of retaliation, the plaintiff must prove: (1) she engaged in protected activity; (2) the employer took an adverse employment action against her; and (3) a causal connection between the protected activity and the adverse employment action.[55]

Plaintiff asserts that she was retaliated against after submitting official grievance forms, which alleged that women were being discriminated against at RCF.[56] In particular, she asserts that shortly after she filed her second grievance, her supervisor requested that Plaintiff receive counseling.[57] Although her supervisor explained the counseling request was made in light of Plaintiff's earlier complaints about the lack of cleanliness in one of RCF's Units, Plaintiff alleges this counseling request was actually "submitted only as retaliation" for her grievances alleging gender discrimination.[58] Plaintiff maintains that she did not violate any PPS or RCF policies that would have warranted a legitimate referral to counseling.[59] Plaintiff suffered "emotional distress, humiliation, embarrassment, [and] loss of self-esteem" as a result of her supervisor's actions.[60] Accepting all allegations in the Amended Complaint as true, Plaintiff plausibly stated a retaliation claim under Title VII.

---

[54] Resp. in Opp. to Second Mot. to Dismiss at 8 (citing Am. Compl. at ¶¶ 27-42).

[55] *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006) (citation omitted).

[56] Am. Compl. at ¶ 43.

[57] *See Moore*, 461 F.3d at 341 (3d Cir. 2006) (citation omitted) (finding that retaliation claims do not limit adverse employment actions to those that "affect the terms and conditions of employment," but also include actions that a reasonable employee would have found "materially adverse," which means that the employee might have been "dissuaded from making or supporting a charge of discrimination.")

[58] Am. Compl. at ¶ 44.

[59] *Id.*

[60] *Id.* at ¶ 76.

9

### 3. Hostile Work Environment

To make out a claim for hostile work environment, a plaintiff must show that: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person of her sex in her position; and (5) respondeat superior liability exists.[61] Defendant contends the Plaintiff fails to allege the second element—pervasive and regular discrimination.[62]

The "severe or pervasive" element requires conduct that is sufficient to "alter the conditions of the plaintiff's employment and create an abusive working environment."[63] Determining whether a work environment is sufficiently abusive or hostile "must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[64]

For example, in *Castleberry v. STI Group*,[65] the United States Court of Appeals for the Third Circuit found that the African American employees' allegations described conduct that was sufficiently severe or pervasive to state the elements of a hostile work environment claim.[66] There, the supervisor allegedly used a racially charged slur in front of employees, and in the

---

[61] *See, e.g., Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999).

[62] Second Mot. to Dismiss at 9-10.

[63] *Moody v. Atlantic City Bd. of Educ.*, 870 F.3d 206, 214 (3d Cir. 2017) (internal quotation marks and citation omitted).

[64] *Id.* at 1215 (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001)) (internal quotation marks omitted).

[65] 863 F.3d 259 (3d Cir. 2017)

[66] *Id.* at 265-66.

same breath made threats of termination.⁶⁷ "[N]ot only did their supervisor make the derogatory comment, but on several occasions their sign-in sheets bore racially discriminatory comments and [ ] they were required to do menial tasks while their white colleagues (who were less experienced) were instructed to perform more complex work."⁶⁸ The Third Circuit concluded that the allegations of the supervisor's conduct were sufficiently severe to state a hostile work environment claim.

In this case, the Amended Complaint fails to allege any facts suggesting discrimination that was "severe or pervasive" so as to make the RCF work environment abusive or hostile. Plaintiff nowhere cites physically threatening or humiliating conduct or offensive utterances made to Plaintiff. The allegation that Plaintiff was denied job transfers does not suggest the type of "severe or pervasive" discriminatory conduct that would create an abusive or hostile work environment as opposed to constituting discriminatory treatment.⁶⁹ More facts about her supervisor's actions in creating an abusive or hostile environment at RCF, if any exist, would be necessary to state such a claim. Despite construing the facts in the light most favorable to Plaintiff as the non-moving party, Plaintiff has failed to state plausible facts supporting a hostile work environment claim. This claim will be dismissed without prejudice.

## C. Amendment

Although Plaintiff has not requested leave to further amend the Amended Complaint, she will be granted the opportunity to amend her Title VII hostile work environment claim. Federal Rule of Civil Procedure 15(a) provides that "leave [to amend] shall be freely given when justice

---

⁶⁷ *Id.*

⁶⁸ *Id.* at 266.

⁶⁹ *See Roberts v. Health Partners Plans, Inc.*, No. 17-0297, 2017 WL 3310691, at *4 (E.D. Pa. 2017) (finding that the Plaintiff's statement that her hostile work environment claim was "based upon her race" was insufficient to state severe or pervasive discrimination so as to create a hostile work environment).

11

so requires."[70] Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility.[71] "[A] district court need not grant leave to amend if 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'"[72] Although amendment of Plaintiff's time-barred PHRA claims would be futile, amendment of Plaintiff's Title VII hostile work environment claim may not be futile. Thus, Plaintiff may amend consistent with the limitations set forth in this Opinion.

IV. **CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss will be granted in part and denied in part. Plaintiff will be granted leave file a Second Amended Complaint, in accordance with the limitations set forth in this opinion. An appropriate order follows.

---

[70] Fed. R. Civ. P. 15(a).

[71] *In re Burlington Securities Litigation*, 114 F.3d 1410, 1434 (3d Cir. 1997).

[72] *Kundratic v. Thomas*, 407 F. App'x 625, 630 (3d Cir. 2011) (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)).